# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DOROTHY CONTI and BERNARD R. CONTI,

    Plaintiffs,

  -vs-                                                            No. CIV 96-1439 LH/DJS

WAL-MART STORES, INC., and CYNDI
FUSSELMAN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Post-Judgment Motion for Award of Attorneys' Fees and Costs (Docket No. 159) and George King's Motion to Dismiss and/or Strike Defendant's [sic] Motion for Award of Attorneys' Fees and Costs (Docket No. 165). The Court, having considered the Motions, the accompanying memoranda, and the applicable law, and otherwise being fully advised, finds that George King's Motion is well taken and will be **granted** and that Defendants' Motion is not well taken and will be **denied**.

This case was tried in November 1998 on Plaintiffs' claim that Wal-Mart caused Dorothy Conti's stroke by negligently doubling the dosage of her estrogen prescription. The jury returned a verdict for Defendants.

Defendants' efforts to secure deposition testimony regarding family medical history from Mrs. Conti's parents and her two sisters, all of whom retained counsel, was a recurring issue in the months prior to trial. Defendants complained just prior to trial that Plaintiffs and their attorneys

obstructed Defendants' efforts to obtain this discovery and moved the Court to bar Plaintiffs from offering any information or evidence contravening Dorothy Conti's statements in her medical records concerning her family medical history. The Court denied the Motion, stating in its Order entered October 30, 1998, however, that it was "very concerned about the seriousness of Defendants' allegations and was unconvinced by Mr. Ray's denial at the Pre-Trial Hearing . . . ."

Defendants now contend that Mr. Ray's and Mr. King's activities in this regard unreasonably and vexatiously multiplied the proceedings. Defendants move to recover their costs and attorneys' fees from Burdick Ray, Plaintiffs' counsel, and George King, Mrs. Conti's sister Diane Henebry's counsel, pursuant to 28 U.S.C. § 1927 and the Court's inherent power to sanction. Section 1927, "Counsel's liability for excessive costs," provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although in their Motion Defendants aver undue interference involving all four relatives, they seek fees and costs only with regard to their efforts to depose Diane Henebry in Arizona and Gwen Reed, Mrs. Conti's mother, in Missouri:

<u>Diane Henebry</u>
    Attorneys' fees (48.8 hrs at $150)    $7,320.00
    Scholl/Bailey admission to D. Ariz. bar    190.00
    D. Ariz. sanctions    <u>7,500.00</u>
                           15,010.00

<u>Gwen Reed</u>
    Travel    670.01
    Attorneys fees (1 hr at $150)    <u>150.00</u>
                          <u>820.01</u>
                          **$15,830.01**

The Magistrate Judge in Arizona sanctioned Defendants and their attorneys in the proceedings conducted there, holding them jointly and severally liable for Ms. Henebry's attorneys' fees and costs in the amount of $7,500. Defendants have appealed that ruling to the District Court Judge.

## I. George King's Motion to Dismiss and/or Strike Defendant's [sic] Motion for Award of Attorneys' Fees and Costs

Mr. King moves to dismiss or strike the Motion on grounds that the District Court of New Mexico lacks personal jurisdiction, subject matter jurisdiction, and/or for lack of service of process. The parties cite, and the Court has found, no case law or other authority addressing factual circumstances comparable to those of this case - a request that the court in which the action is pending sanction out-of-state *counsel* of a nonparty deponent who was to be deposed in another state for conduct that took place in the other state.

Over the course of Defendants' efforts to depose Ms. Henebry last year, Mr. King amassed monthly attorney's fees as follows: May - $3,938.07, June - $2,937.49, July/August - $1,851.03, September - $2,124.75, for a grand total of $10,851.34. The Court certainly finds this sum noteworthy.

A. Lack of Service of Process

Mr. King argues lack of personal jurisdiction as a matter of process, relying on *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 265 (5th Cir. 1995). The *McGuire* court cites Moore's Federal Practice for the proposition that "[s]ervice of process relates both to the court's power to determine the rights of the defendant, and to notice to the defendant that his rights are being put in issue, so that he may have the opportunity to appear and defend." *Id.* at 906-07.

In *McGuire*, Veach, in-house counsel based in Texas for a defendant corporation, destroyed certain documents that were subject to discovery requests. Veach was not counsel for the company in the case, which was pending in the eastern district of Louisiana. A Louisiana magistrate judge held a hearing on plaintiffs' motion for default judgment and other sanctions against the company, but not against any individual attorney or officer of the company. In fact, at the hearing the magistrate judge stated, "I do not intend to render sanctions against a specific individual." *Id.* at 904 n.3. Veach testified at that hearing. Subsequently, the district court issued an order adopting the magistrate judge's recommendations and further stating that it would institute criminal contempt proceedings against Veach. That order also referred the matter to the state bar of Texas and the US Attorney for the eastern district of Louisiana. Veach's counsel twice requested retraction of the referrals and a hearing. Then, without prior notice or a hearing, the district court *sua sponte* entered an order fining Veach $5,000.

On appeal, the Fifth Circuit vacated the district court's order, finding that the district court had not acquired personal jurisdiction over Veach. *Id.* at 903. Noting that "*it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties*," the appellate court found that, in any case, the district court had not acquired personal jurisdiction, "as a matter of process," over Veach. *Id.* at 908 (emphasis added). Veach had not been served with any document satisfying the requirement of formal process at the time sanctions were rendered against him; he was not a party or attorney to the case, alter ego of a party, member of the district court's bar, or otherwise subject to the district court's jurisdiction. *Id.* at 907. Neither had the district court issued a show cause or similar order or process that would have put him on notice that sanctions were being considered against him. *Id.* The appellate court also found Veach's

4

participation in the case as in-house counsel and as a witness, insufficient to overcome the deficiency in notice. *Id.* While he was subject to the court's inherent power to control the litigation before it for his conduct in the court's presence, "constructive" contempt, if within the court's power to punish, requires some form of process to alert the alleged contemnor of the court's intention to sanction him. *Id.*

Notice obviously is not at issue in this case. Additionally, the *McGuire* court did not find that service of process was the only way that sufficient notice could be given. Therefore, the Court will not grant Mr. King's Motion on this ground.

B. Personal Jurisdiction

Personal jurisdiction may be either general or specific. General jurisdiction is jurisdiction to adjudicate claims not arising from the defendant's contacts with the forum state and usually exists only when the defendant's forum connections are continuous, systematic, and substantial. 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 108.40 (3d ed. 1999). General jurisdiction clearly is not applicable in this matter.

Specific jurisdiction is jurisdiction to adjudicate claims arising from the defendant's contacts with the forum state and may be available when the defendant has few contacts, or even a single contact, if the claim arises directly from that contact. *Id.* Specific jurisdiction generally requires a showing by the plaintiff that: 1) the nonresident defendant has purposefully established significant contact with the forum state and 2) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. *Id.* § 108-53. Although contact sufficient to meet the requirements of the due process clause has been described by the Supreme Court as "minimum contacts," the contact must be significant, rather than random, fortuitous, or attenuated. *Id.* at 108-56 to -57.

The contact also must be an act by which the defendant "purposefully avails" himself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws. *Id.* at 108-09. If the plaintiff makes this showing, the burden shifts to the defendant to show from the balance of interest factors that exercise of specific jurisdiction would be unfair--that it would offend traditional notions of fair play and substantial justice. *Id.* at 108-53 & n.2.

Defendants contend that because Mr. King "worked with Plaintiffs' attorneys to block discovery specifically authorized by the [District of New Mexico] Court," he is subject to this Court's jurisdiction. However, Mr. King's only direct contact with New Mexico is that Plaintiffs submitted his declaration regarding the Arizona proceedings in support of their response to Defendants' earlier Motion for Sanctions regarding these events. Mr. King is not listed in the Bar Directory as a member of the New Mexico State Bar. A search of the Court's database does not show him to have entered an appearance in the federal district court of New Mexico and he is not a member of the Federal Bar of New Mexico.

Although there is no case law discussing attorneys in Mr. King's position, both case law and the Federal Rules of Civil Procedure distinguish between parties and nonparties to litigation and the powers of the trial court vary according to the deponent's status and where the deposition took place. For example, FED. R. CIV. P. 37(a)(1) provides that an application for an order compelling disclosure or discovery from a party be made in the court in which the action is pending, while such an order against a person who is not a party must be made to the "court in the district where the discovery is being, or is to be, taken." Accordingly, sanctions for failure to comply with the order by a party or party-designee may be imposed by the court in which the action is pending, while failure of a deponent to follow the directions of "the court in the district in which the deposition is

6

being taken, . . . may be considered a contempt of *that* court." FED. R. CIV. P. 37(b)(1), (2)(emphasis added).

According to the Advisory Committee Notes, Rule 37(a)(1) was amended in 1970 to eliminate the need for a trial court to resort to its "inherent power" to sanction a party for misconduct during a deposition taken in another district. While the "old" rule referred only to the court in which the deposition was being taken, the court in which the action was pending had inherent power to compel a party deponent to answer. *Lincoln Lab. v. Savage Lab.*. 27 F.R.D. 476, 480 (D. Del. 1961). Conversely, however, "the . . . court where the suit is pending cannot make or enforce any order as to a witness over whom it has *no personal jurisdiction*." *Id.* (emphasis added)(citing *Gottlieb v. Isenman*, 15 F.R.D. 88 (D. Mass. 1951)(court refused to dismiss complaint as sanction for failure of nonparty deponent to appear for deposition scheduled in southern district of New York; relief available against recalcitrant witness must be sought in New York)).

The Tenth Circuit has ruled accordingly, holding in *First Nat'l Bank at Thermopolis v. Western Cas. and Surety Co.* that the District Court of Wyoming did not have jurisdiction over a nonparty deponent whose deposition hearing commenced in Colorado. 598 F.2d 1203 (1979). Thus, the appellate court reversed the contempt order and commitment issued by the district of Wyoming court, favorably quoting Wright and Miller's interpretation of Rule 37(a)(1): "when a deposition [i]s being taken in one district for use in a case pending in another district[, t]he court in the district where the suit is pending cannot impose any sanction against a witness who is not a party." *Id.* at 1206.

7

The Court has found a case in which submission of an affidavit by a defendant was held sufficient to establish specific jurisdiction. In *Giusto v. Ashland Chem. Co.*, a secretary employed by Ashland in Virginia submitted an affidavit, assumed by the court for purposes of the motion to dismiss to include defamatory statements, knowing that it would end up in Pennsylvania. 994 F. Supp. 587, 592 (E.D. Pa. 1998). In finding it had personal jurisdiction, the court noted the uniqueness of defamation and libel in that the "act can be done in one place, but the effects may foreseeably be felt in some distant location." *Id.* The matter before this Court, however, is not a claim of defamation or libel, regardless of Defendants' complaint that they and their attorneys have been slandered and maligned, (Mem. Supp. Defs.' Post-Trial Mot. ¶ 66(b)), making it much more difficult to find that Defendants' claims arise out of or are related to the King declaration to a level that would make it fair to say that Mr. King should have expected to be haled into court in New Mexico.

In addition to the lack of "contact," the element of "purposeful availment" on Mr. King's part is weak, at best. Furthermore, a finding that an out-of-state attorney representing a nonparty deponent in another state is subject to the jurisdiction of the court before which the underlying suit is pending, might be argued to have a chilling effect on the individual's right to legal representation.

Defendants use terms like "acted in concert" and "collusion" in describing the activities of Mr. King and Mr. Ray. There is case law holding that nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating the order. *See, e.g., United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997); *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985). *Barnette* involved an appeal of a civil contempt order issued for failure to abide by a court

order to enforce a forfeiture judgment against Larry Barnette. The appellate court concluded that the district court had personal jurisdiction over Kathleen Barnette, defendant's wife, even if it initially lacked jurisdiction, finding that she had aided and abetted her husband, "every step of the way--in hiding funds and financial information subject to the forfeiture judgment of which she had notice, to the discovery requests of which she had notice, and to the show cause order of which she had notice." *Id.*

*Waffenschmidt* also involved knowing violation of a court order, in that case by agents of a party who aided and abetted the party in dissipating and secreting assets in contravention of an injunction. The appellate court concluded that even with no other contacts with the forum, jurisdiction over the nonparties was "necessary to the proper enforcement and supervision of a court's injunctive authority[, the mandate of which runs nationwide,] and offends no precept of due process." 763 F.2d at 716.

Defendants offer little more in support of their aiding and abetting theory than the fact that there were many phone calls between Mr. King and Mr. Ray. Unlike the *Barnette* and *Waffenschmidt* cases, there has been no assertion that Mr. King disobeyed or aided others in disobeying any order of this Court, much less a finding that he violated an order of the Court. What is clear is that Mr. King blocked deposition of his client by securing an order of the district court of Arizona quashing the subpoena. Furthermore, this case involves discovery matters, not orders seeking to conserve from fraudulent conveyance large amounts of money under court order. Thus, the *Barnette* line of cases does not appear to justify imposition of personal jurisdiction over Mr. King. Additionally, Mr. King maintains in his reply that any conspiracy argument is barred by

*res judicata*, as the Arizona court heard and decided this issue in ruling on Ms. Henebry's motion for sanctions against Wal-Mart.

C. Subject Matter Jurisdiction

Mr. King also challenges the Court's subject matter jurisdiction to hear this matter. Defendants assert that jurisdiction lies with 28 U.S.C. § 1927. Again, there is no case law involving the factual situation confronting the Court.

There is case law, however, finding that 28 U.S.C. § 1927 does not provide an independent cause of action. *Raymark Indus., Inc. v. Baron*, No. CIV. 96-7625, 1997 WL 369333, at *1, 7-8 (E.D. Pa. 1997)(citing *GRiD Sys. Corp. v. John Fluke Mfg.*, 41 F.3d 1318, 1319 (9th Cir. 1994); *Matter of Case*, 937 F.2d 1014, 1023 (5th Cir. 1991); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69-70 (2d Cir. 1990)). In *Raymark*, plaintiff sought damages under a bankruptcy statute and rule, 28 U.S.C. § 1927, and state law for wrongful filing of an involuntary bankruptcy proceeding. The court agreed with defendants that § 1927 does not provide an independent cause of action. 1997 WL 359333 *7. Noting that the principal purpose for imposing sanctions under § 1927 is the "deterrence of intentional and unnecessary delay in the proceedings," the court held that such delay should be confronted when it occurred, not after the fact through a separate lawsuit. *Id.* (quoting *Zuk v. Eastern Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996)). Finding that "the actions complained of . . . did not in any way delay or interfere with the proceedings in this court," *id.* at *8,* the court held, in agreement with the Second, Fifth, and Ninth Circuits, "that a judge cannot impose sanctions pursuant to § 1927 for conduct that did not occur as part of the proceedings in front of that judge," *id.* at *7.

10

On the other hand, lack of subject matter jurisdiction over the underlying case clearly "does not divest the court's ability to impose the sanction under § 1927." GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE 410-11 (2d ed. 1994). "Indeed, the sanction may be occasioned precisely because of the lack of jurisdiction (*e.g.*, the unreasonable and vexatious litigation of a claim by a plaintiff who masks the court's lack of jurisdiction by making false allegations of citizenship in an attempt to manufacture diversity). *Id.* at 411.

D. Other Arguments

Mr. King argues that if any proceedings were multiplied, they were in Arizona, not New Mexico. He notes that the fees sought by Wal-Mart all relate to the Arizona proceedings and that Defendants have not identified any pleadings filed in the District of New Mexico that were allegedly unnecessary.

Mr. King also cites to *Morris v. Peterson*, 871 F.2d 948 (10th Cir. 1989), for the proposition that even if the Arizona proceedings are causally related to this action, this Court lacks jurisdiction to sanction conduct that occurred in Arizona. The *Morris* ruling that determination of sanctions against attorneys for conduct on appeal is not within the authority of the district court under § 1927 and the inherent equitable power of the court, but "is reserved to the court in which the appellate conduct occurred," *id.* at 952, however, does not necessarily extend to the facts of this case. A reading of a case cited in *Morris* for the basic rule "that the determination of the right to sanctions against counsel for conduct during appeal is reserved to the appellate court," *id.* at 951 (citing *Glatzer v. Montmartco, Inc.*, 790 F.2d 285, 288 (2d Cir. 1986)), shows that this tenet is grounded in fundamental policy, not interpretation of § 1927 or inherent powers: "A rule permitting a district court to sanction an attorney for appealing an adverse ruling might deter even

11

a courageous lawyer from seeking the reversal of a district court decision," *Glatzer*, 790 F.2d at 288 (quoting *Cheng v. GAF*, 713 F.2d 886, 891-92 (2d Cir. 1983)).

    E.  Conclusion

An analysis of the available authority leads the Court to the conclusion that it does not have jurisdiction over the person of Mr. King. Therefore, the Court will **grant** Mr. King's Motion on that ground. Such a holding does not leave Defendants without recourse. Authority to sanction Mr. King lies with the District Court of Arizona, the court from which Diane Henebry, a nonparty, was subpoenaed and the court in which Mr. King represented her. If Mr. King's behavior is sanctionable, the district court of Arizona has and, in fact, is exercising its jurisdiction over Mr. King in those related proceedings.

## II. Defendants' Post-Judgment Motion for Award of Attorneys' Fees and Costs

Interestingly, Mr. Ray responds to the Motion on behalf of not only himself, but also for Plaintiffs and his co-counsel, Mr. Vigil. The Motion, however, is directed only at him and Mr. King. Perhaps he is attempting to align himself with those whom he believes might be regarded more sympathetically by the Court. In any case, the Court finds that Mr. Vigil is in no way implicated in the behavior complained of herein.

    A.  The Law

Award of excess costs, expenses, and fees under § 1927 "is a power that must be strictly construed and utilized only in instances evidencing a 'serious and standard [sic] disregard for the orderly process of justice.'" *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)(*en banc*) (bracketed material in original)(quoting *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985)). This is an "extreme standard," *Aerotech, Inc. v. Estes*, 110 F.3d

12

1523, 1528 (10th Cir. 1997)(quoting *White v. American Airlines, Inc.*, 915 F.2d 1414, 1427 (10th Cir. 1990)), and care must be taken to ensure that "§ 1927 'in no way will dampen the legitimate zeal of an attorney in representing his client,'" *Braley*, 832 F.2d at 1512 (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Ad. News 2716, 2718, 2782)).

The Tenth Circuit articulated the proper standard for imposing sanctions under § 1927 in *Braley*: "'conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' warrants the imposition of excess costs, expenses, or attorney's fees personally against the attorney responsible for unreasonably multiplying the proceedings." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998)(quoting *Braley*, 832 F.2d at 1512). This standard "is then used to decide whether 'by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law,'" an attorney may be sanctioned. *Id.* (quoting *In re TCI Ltd.*, 769 F.2d 441, 455 (7th Cir. 1983)). Sanctions against an attorney under § 1927 are appropriate, then, when the attorney "is cavalier or 'bent on misleading the court,' intentionally acts without a plausible basis, when the entire course of the proceedings was unwarranted, or when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the cost of litigation." *Id.* (internal citations omitted).

The First Circuit, which also applies an objective standard in its analysis under § 1927, has defined "vexatious" behavior as that which is

> harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed . . . . The attorney need not intend to harass

13

or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice.' [Thus,] 'vexatious' necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence.

*Cruz v. Savage*, 896 F.2d 626, 632 (1990)(internal citations omitted).

B. Discussion

Defendants' recital of the events surrounding their attempts to depose Mrs. Conti's family, coupled with the billings run up by Mr. King, certainly arouses suspicion as to the motives involved. Indeed, the Court already indicted its concern regarding this issue in its earlier Order:

> Defendants allege that Plaintiffs and their attorneys obstructed Defendants' efforts to obtain Court authorized discovery of family medical histories from certain relatives of Dorothy Conti. As sanctions, Defendants ask that Plaintiffs be precluded from offering any information or evidence in contravention of Dorothy Conti's statements in her medical records concerning her family medical history.
> *Although the Court is very concerned about the seriousness of Defendants' allegations and was unconvinced by Mr. Ray's denial at the Pre-Trial Hearing*, it concludes that there is no inference that the testimony obtained by deposition is not truthful and will not grant the sanctions requested. The Court, however, will consider specific objections by Defendants at trial in the event Plaintiffs attempt to introduce evidence controverting the family medical history contained in Ms. Conti's medical records.

(Order of October 30, 1998 (emphasis added).)

Mr. Ray first argues that the family medical histories were irrelevant, an argument that is totally irrelevant in itself. Regardless of what Mr. Ray may or may not believe regarding the information sought or what subsequently may have happened at trial, the Court extended the discovery deadlines specifically to allow Defendants time to obtain that information.

Mr. Ray next contends that the King time records show that he was not involved. There were more than a few contacts between Mr. Ray and Mr. King, however, at least sixteen between

14

May and September 1998. Mr. King also was in contact with Mr. Goldberg, the California attorney representing Mrs. Conti's father and her other sister, and attorneys in Missouri, regarding the mother.

Mr. Ray also argues that he actually took steps to avoid involvement in the family members' depositions and that when he was involved, he attempted to assist in securing the depositions. He maintains that any delay was the fault of Wal-Mart's attorneys, not his. According to Mr. Ray, "*[a]pparently*, the family members made inquiries regarding their rights," after initially submitting their medical history authorizations, which they subsequently revoked. (Resp. at ¶ 39 (emphasis added).) He also claims that "[a]ll will admit no correspondence communicating legal representation of family members by Mr. Ray or Mr. Vigil was forwarded to any firm in this case." (*Id.* at ¶ 40.) Interestingly, he continues, "[w]hether one or more lay family members *imagined some form of legal representation on their own establishes nothing*." (*Id.* (emphasis added).)

Mr. Ray further maintains that the "conspiracy theory" has been argued twice, in Arizona and here in regard to Defendants' Motion for Sanctions, the subject of the October Order, and rejected twice. In conjunction with this contention, he maintains that the October ruling constituted a finding that his behavior was objectively reasonable, thereby barring a subsequent contrary determination under § 1927. This court's Order on October 30, 1998, clearly made no such finding.

Mr. Ray also argues that the Motion is based on speculation, as the Missouri and California depositions eventually went forward and the problems with the Arizona deposition stemmed from misconduct by the defense attorneys. His final point is that there is no case law applying § 1927

15

to facts such as these. He closes with a request that he be awarded $1,500.00, pursuant to § 1927, for having to respond to Defendants' Motion.

C. Conclusion

As the Court found with regard to Defendants' earlier Motion concerning these events, Mr. Ray's denials are "unconvincing." Indeed, several of his positions seem deserving of sanctions in and of themselves: responding as if the Motion is directed also at Plaintiffs and Mr. Vigil, which it clearly is not; arguing that because the family medical histories were allegedly irrelevant, any obstruction of discovery in that regard is not sanctionable; and maintaining that in the October Order the Court held his behavior with regard to these events objectively reasonable, barring granting of this Motion.

On the other hand, however, Mrs. Conti's family members certainly were entitled to counsel regarding their depositions, if they so desired. Additionally, as family members they obviously did not have the motivations of disinterested third persons. To this end, Mr. King asserted in his October declaration:

> ¶ 16 . . . . According to Wal-Mart, I was required to represent Ms. Henebry in some sort of fashion as to be neutral between Plaintiffs and Defendants. This notion is patently absurd.
> . . .
> ¶ 18 I believe that it would have been perfectly proper for me to have done everything legally within my power to assist Plaintiffs in the prosecution of their case. I believe that Ms. Henebry had the right, if she chose, to instruct me to cooperate completely with Plaintiffs' attorneys.

(Resp. Ex. L.)

As suspect as Mr. Ray's behavior has been, this case is a particularly difficult one in which to apply either § 1927 or the court's inherent powers. While on the face of it, Mr. Ray and Mr. King appear to have acted to prevent or delay discovery in Arizona, all of Mr. King's activities were supposedly on behalf of his client, Ms. Henebry, a nonparty. The Court will accept that these acts were made in her interest and with her approval. There is no evidence to the contrary, even though the lack of cooperation was a problem for Defendants. Moreover, Defendants' attorneys appear to have brought much of the resulting delay and multiplication of the proceedings upon themselves by failing to timely respond to the pleadings filed by Ms. Henebry in Arizona. Finally, the Court does not see any reason to further prolong these proceedings. Therefore, the Court will deny Defendants' Motion.

**IT IS HEREBY ORDERED** that George King's Motion to Dismiss and/or Strike Defendant's [sic] Motion for Award of Attorneys' Fees and Costs (Docket No. 165) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Post-Judgment Motion for Award of Attorneys' Fees and Costs (Docket No. 159) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**